Next case in the calendar, United States v. Ganow. Good morning, Your Honors. May it please the Court, my name is Allegra Glasshauser and I'm representing Mr. Roman Ganow. Your Honors, Mr. Ganow returned to the United States to be with his family. He didn't present fake documents, he didn't try to sneak into the country, he didn't lie to federal agents, and he didn't commit new crimes while he was here. He just went to the airport hoping that he could return to his home where he'd lived legally for 20 years to return to his family, to his partner, and their three children. In these circumstances, the 46-month sentence was unreasonable. Mr. Ganow had a compelling life story, but the Court gave no indication that it considered it. He was raised in extreme poverty, one of 11 siblings who had no water or electricity, but he rose out of that. He graduated from high school, went to some college, got a job, provided for his family. His motive in illegally returning to the country was simply to be with his family. He apologized to the Court and said one day he hoped he could return legally. This was not a frivolous- The trial judge was clearly troubled by the prior robbery slash burglary conviction. The only thing the trial judge said that related to Mr. Ganow was asking a question about the prior conviction, but the prior conviction, putting aside for a moment the correct applicability of the enhancement, was already very strongly taken into account in the guideline range that was considered here. It was a 16-point enhancement. The trial judge's comment or question about that enhancement isn't enough to satisfy his obligations to consider the 3553A factors. This is a case where we're viewing for plain error. That's true, Your Honor, with respect to these arguments, yes. Right, right. I take it your concern is that ... A principal concern is that there was not an adequate statement of reasons. Is that correct? Right. There wasn't an adequate explanation of why the sentence was chosen. In this- The Court didn't expressly adopt the PSR. If it had, would that have made a difference? I don't believe that would make a difference here, Your Honor, because the Defense Council made many non-frivolous arguments for a lower sentence, many of which I've already articulated, and also specifically with this guideline, 70% of people in Mr. Hinao's position were actually sentenced below guidelines. So a guideline sentence- A percentage of those had committed a crime like the one that Mr. Hinao was convicted of. Well, it's all ... That 70% figure is all for people who had the 16-point enhancement, so it would all be- The 16-point enhancement applies to narcotics felonies, doesn't it? I believe that's true, Your Honor. But this case, and on this issue, putting aside the issue as to whether the 16-point enhancement applies technically, on this issue, the judge can consider the specific facts of the crime, right? That's correct, Your Honor. The specific facts of the crime are this is a home invasion with a knife held to the throat of the victim to accomplish the burglary and robbery that that constituted. The facts are not- I mean, when you say 70% of the people who got the enhancement got below guidelines sentences, there are aggravated felonies and aggravated felonies, and some of them aren't very aggravated. Your Honor, he was punished for that crime. I understand that, but you're not suggesting that that's not something that the judge could take into account. The judge can, of course, take into account the nature of the crime, but the sentencing commission did see fit to actually change this guideline shortly after Mr. Hinao was sentenced, finding that it was overly severe and resulted in disproportionate punishment. If he were sentenced today, or re-sentenced, if he was remanded for a re-sentence, his guideline would be lower. It would be 31 to 37 months. This isn't a situation where- In that situation, we'd have a rather different situation if the judge just said, well, I think it's 46 months just because, and gave an above guideline sentence. Yes, Your Honor, it would be different if it was above guidelines, but I think it's important in looking at the sentencing. The judge, in addressing the enhancement, which actually did have specific things the judge needed to find, the judge didn't find those things. It didn't rely on looking at the elements of the statute and just focused on the facts. The judge didn't say, and I'm just considering that in the 3553A factors, the judge actually said nothing about the 3553A factors except the magic words of the 3553A factors. He didn't give any indication that he'd taken all of the rest of Mr. Hanau's life and the circumstances of this particular offense. Did he ever require judges to give an explicit run-through of each of the factors? Not of each of them, Your Honor, but here, the judge didn't discuss them. The judge didn't even . . . Counsel argued the different factors, right, and the judge listened. I presume so, Your Honor. I can't say what the judge did while remaining quiet, but the judge didn't even mention the facts of the crime itself, and it's worth mentioning that this wasn't a situation where Mr. Hanau snuck in or did anything other than hope that the airport officials would let  me. This wasn't a . . . the circumstances . . . Now, the first argument in your brief, the argument you've just made takes three pages of your brief. The other 15 pages of argument relate to the procedurally unreasonable argument that's based on applying the categorical approach or modified categorical approach to this crime. So, I'm wondering why we haven't heard more about that, and in particular, I'm wondering about the somewhat peculiar 28J letter we received from the government the other day. Does that play any role in . . . are you still contending that the documents in the record don't support a finding that this was a crime of violence? Yes, Your Honor. And the 28J letter doesn't . . . didn't change my opinion of that. I had already argued in my main brief that robbery under the subdivision that the government now believes is the correct one was not a crime of violence. The reason I focused on the other portion of my argument is because Mr. Hanau's sentence ends in December of 2018, and because the guidelines have changed and this issue of whether his prior convictions are a crime of violence would no longer play a role at all at a resentencing. For Mr. Hanau to get a practical benefit of a resentencing, the court could decide on these other issues without having to wait for Jones, wait for Beckles, or wait for any other decisions to be . . . Was the guideline amendment pending at the time that the sentence took place here? In other words, had the Sentencing Commission already announced that amendment and it was just waiting to go into effect, or was that just a gleam in the eye of the Sentencing Commissioners, if that? My understanding is it happened very shortly afterwards. It's not mentioned in the record, but I think it's important in considering what might otherwise be looked at as a just regular within-guideline sentence that the Sentencing Commission . . . I understand, but we have precedent in which a . . . and certainly there's a practice in the district court that sometimes when a modified guideline is pending, judges hold up their sentences waiting for it to come into play in appropriate cases. I'm wondering if that was the situation, and if defense counsel did not make an application to defer the sentencing until that new guideline went into effect, might there be an ineffective assistance of counsel claim lurking in the background here? I don't believe so, Your Honor. The official report of the Sentencing Commission had not been released on this. I'm not sure . . . I see. .      That claim is set up to demand. In relation to the other section that the government now believes applies based on the documents on appeal. That subsection is also not a crime of violence because it has the strict liability aspect for aggravating factor. The robbery statute is the same as burglary statute in New York. It is prohibits the commission of committing the crime. It's either or. And if there are two people, the aggravating factor is a strict liability crime. You don't have to have the intent for the aggravating factor, the use of a dangerous instrument to be convicted under New York law. And that's different than federal law would be for aiding in a crime where you would need to also have the intent for the aggravating factor. How would you respond to the argument that the career offenders guideline that's at issue in Jones is different in significant ways from the illegal reentry guidelines so that in Jones the definition of a crime of violence included the force clause directly in the definition itself and the enumerated offenses only appear, you can find them only in the commentary. So, you know, the argument could be made that an enumerated offense would not satisfy the definition of crime of violence if it wasn't also involving violent force. But here in comparison by contrast, the only definition provided for a crime of violence is in the commentary itself which includes both the force clause and the list of enumerated offenses. So why isn't that, why isn't it sufficient that robbery is among those enumerated offenses defined as crimes of violence? Your Honor, I think that may be the government's strongest argument which I will let them make, but as the Jones court decided the case, and I don't know what they'll do in the future, they disregarded, the panel disregarded the commentary and the enumerated offenses. They didn't, the panel didn't discuss the presence of the enumerated offenses and when the list is the same for the illegal reentry commentary as it is for the career offender guidelines, it wouldn't make sense to find that there was a crime of violence based on that list in one but not in the other. And the court does take consideration of enhancements that have such a severe impact on a sentence. You determine those strictly and when considering that, I just think that it would not make sense to look at them differently, but I understand that that's something that depends really on. Well yes, I mean the Jones panel has precedence in this case is the problem and you're telling us that given that the Jones panel is waiting for Beckles and that may not come down until June and then after that's decided, the Jones panel will presumably get additional briefing on the impact of Beckles. If Beckles goes the wrong, if Beckles goes the right way for you, that might be helpful. If it goes the wrong way, you know, I don't know what happens then, but there's probably more briefing. Then we get a new opinion in Jones and by that time you're guys out of prison anyway. Exactly and that really is why I had shifted my focus for this argument to what I think are very significant reasons to remand anyway, avoid this very complicated and likely very lengthy weight to determine the technical legal issues involved in the guidelines and that. And what is the enhancement that now applies under the current guideline is based on the length of the sentence for the underlying crime. Exactly. And your man would qualify for a 12 level enhancement based on the sentence? Is that right or is that wrong? I believe it's 10, Your Honor, but the new range would be 30 to 37 months. Okay. So it is, it's significantly lower, but not, you know, not as low as it would be without the other enhancement. Right, but the enhancement, you know, just, I'm just trying to understand the interrelation of, because what happened in the new amendments is not just a simple reduction. It's a substitution of a different standard. Exactly. So under the new standard, you're telling us that your client comes out with a 30 to 36, did you just say? 30 to 37. 30 to 37. Under the old guidelines, if the 16 point enhancement does not apply, what does he drop back to? It would be 18 to 24. So he would actually be better off under the old guidelines if you are correct on your procedural unreasonableness argument. Theoretically. As a practical matter, he's already served that time. So for him to get relief, it makes more sense to remand for resentencing under the new guidelines, which the commission has deemed the appropriate ones, and the court can avoid maybe ever deciding. Has he already served 37 months? No, but I believe he's already served the 24, and certainly the 18, which is what he would be eligible for under the . . . I know, but if we remand on a theory that has something to do with the new guidelines, that wouldn't necessarily . . . that wouldn't lead to his immediate release, because if he were sentenced to something within those guidelines, and again, he might not be, because who knows what the judge will think is reasonable if we were somehow to send it back for him to rethink the whole thing, but under the guidelines, he would still have some more time to serve. I suppose it depends how quickly the panel decides. I hear what you're saying. It's an interesting . . . I've never seen this before. I've seen situations where a defendant is clearly better off under one set of guidelines or under another, but here we've got this oddity, it seems to me, where under the old guidelines, he could be worse off or he could be better off depending on a rather arcane set of rules that we're all used to of categorical approach, whereas under the new guidelines, he'd be somewhere in the middle regardless. That's right. But I take it you and your client have considered all of this, and that's why you're pursuing this appeal in the way that you're pursuing it. Yes, Your Honor. I want to make it clear that I'm not saying that the other argument is not valid. I understand. You've got one argument that is procedural. You're still relying on procedural unreasonableness that would lead to one kind of outcome, substantive unreasonableness that might lead to a conclusion. I'm not saying that it's a complicated tactical decision as to how you would handle either event on remand. Got it. Right. I think the point is, overall, the sentencing judge here didn't do enough to either explain his reasons for why he applied the 16-point enhancement or explain his reasons otherwise for the sentence. And it's just not enough to take that — it didn't take enough into account Mr. Hannau's individual background and circumstances. Thank you. Thank you. May it please the Court, my name is Mike Kilty and I represent the United States today. I was also the Assistant U.S. Attorney assigned to the case at the district court level. Isn't it the case that the sentencing judge provided almost no explanation for the sentence at the sentencing hearing? Your Honor, the government   I think it's pretty contentious that he did satisfy his burden and I'll explain why. This was a guideline sentence. There was no need — it was actually the low end of the guideline, the lowest end of the guidelines. There was no need for the court to provide a specific reason, as in the case with an above-guideline sentence. Did the court specifically adopt the PSR? He did in his statement of reasons, Your Honor. And here the court informed the parties, both in open court and it is not in open court. So he adopted it in open court? He adopted it in his statement of reasons, Your Honor. Not in open court. Right. That's correct. But not in open court. He talks on the statement of reasons form. Yes, Your Honor. In open — But just so we can clear one bit of debris, does that mean that you really can't rely on the burglary theory here because the judge didn't say anything about burglary and the pre-sentence report didn't say anything about burglary. It relied on robbery as the reason. For the enhancement, yes, Your Honor. Yeah. Okay. But with respect to Judge Katzmann's point, with respect to open court, you know, he informed the parties that he considered the oral argument, which went on for quite a while. He considered the parties' submissions and he considered all the factors of 3553A. Here, the judge on the record, going through the defendant's criminal history, talked pretty extensively about the violent nature of the underlying crime that Judge Lynch mentioned was a very violent robbery and burglary where a knife was put to the victim's throat. So I believe, you know, based on the fact that this was a low end-of-the- guideline sentence, that the district court satisfied his obligation here under 3553C. I will also just mention, you know, the Supreme Court in Rita has, you know, in straightforward arguments, which are simple arguments before a judge, a brief statement of reasons is necessary. It has enough to do a long soliloquy about the reasons. I can now move to the enhancement, if the court would like. The 16-point enhancement. As the court mentioned, in the government's appendix, it did provide Shepard documents that it had received later in the game, right before it actually submitted its brief. These documents leave no doubt that the defendant committed a crime of violence. They show that he was convicted in a New York State robbery in the first degree. Subparagraph. These were not submitted to the district court? They were not, Your Honor, and part of the reason why they were not submitted to the district court is because the government first learned that there was a challenge to the enhancement the night before sentencing. And, in fact... Should we remand it so that the district court can see these documents in the first instance? Your Honor, I don't believe that's necessary because I believe it would be a harmless error and that we can just, based on what's in the record now, nothing would change. You know, the defendant was convicted of robbery in the first degree, subparagraph 3. That is the use or threatened use of a deadly instrument. We talked about Jones here for a second. I gather, with respect to the argument that there might be a strict liability if there's a second person involved, I gather your argument would be the indictment makes it clear that this was a one-person robbery? That's correct, Your Honor. In your 28J letter, and this is regarding the robbery, and correct me if I'm misunderstanding your argument that . . . you say that, as I understand it, that the defendant was convicted of first degree robbery with the subsection 3 aggregating factor of the use or threatened immediate use of a dangerous weapon. Under New York law, though, as I understand it, mental culpability, I'm quoting from People v. Parker, mental culpability with respect to any of the aggravating factors that elevate a robbery to one in the first degree need not be established. Now, if that's correct, since intentionality need not be proven as to any of the four aggregating elements of 160.15, can first degree robbery with a subsection 3 constitute . . . subsection 3 aggravating factor constitute a crime of violence under the modified categorical approach? I believe it can, Your Honor. How so? Because I'm not sure how you . . . so it's the use or the threatened use of a weapon which is capable of causing serious physical injury. I'm not sure how that occurs with any other mental state. The only way that would occur, as a practical matter, is if there were an accomplice. In other words, if you are the getaway driver or something like that, you are responsible for the crime that the principal commits, even if you, the principal, is not the perpetrator. So, in other words, there is no evidence that a deadly or dangerous weapon, whatever the language is, was used or threatened. Correct, Your Honor. Now, can we tell from this indictment? I mean, it's only a one-person indictment, and there's no reference to any aiding and abetting. Of course, under federal law, it's my understanding that you don't need to reference Section 2, the aiding and abetting statute, in order for that to be effectively alleged against somebody. The government could rely at trial on a theory that the defendant was aiding and abetting, rather than a principal, even if Section 2 isn't mentioned. Do we know anything about New York law on that issue? I do not, Your Honor. So, for all, I mean, you know, I mean, this is the kind of thing that gives the categorical approach a bad name, I suppose, because as far as we know, no one thinks there was a second person in this. There's no reference to accomplices in the indictment. There's no reference to the complicity statute in the indictment, and yet what we are arguing about is whether hypothetically this could be, under this charge, he might have been guilty of a crime that, A, involves too little force to be generic robbery, and B, he could have somehow been an accomplice who was strictly liable for a deadly weapon threat by somebody else. But isn't that where we are under the law, that we're looking at this hypothetically? What is the least culpable person who could have been convicted under this indictment? That's correct, Your Honor, but I don't mean, on the face of the indictment, there is no, whatsoever, to anyone else. Actually, I do see a reference, both in Count 1 and in Count 3, the defendant or another participant in the crime used or threatened the immediate abuse. I hadn't noticed that before. And then also, the same thing in the burglary count. It says the same thing, or another participant. Does that change things? I believe that's just boilerplate language. It is boilerplate language, but it does mean that under this indictment, the prosecutor is invoking statutory language that could, you know, if somebody discovered at the last minute that Hanau wasn't the guy with the knife to the throat but was a getaway driver, he could have been convicted under this indictment. I understand, Your Honor. In terms of the substantive reasonableness of this case, again, the defendant's sentence was 46 months. His guideline range was 46 to 57 months, so this is the low end. As the Court knows, while we don't presume guideline, sentence is necessarily reasonable. That conclusion is warranted in the case. We look at the defendant's criminal history, which was examined by the District Court in pretty expansive levels. His 2010 robbery and burglary convictions, not to belabor the point, stem from a very violent crime. He also has a 1997 assault conviction for causing physical injury with a deadly weapon. This is a violent man. Obviously, his previous sentence didn't deter him from committing another crime, thus the government's intention that a 46-month sentence was substantively reasonable. Can I ask you again, going back to the intentionality issue and looking at it as to burglary, so under New York law, again, quoting from a case, People v. Santiago, the only intent required for conviction of first-degree burglary is the intent to unlawfully enter a dwelling for the purpose of committing a crime. Doesn't that suggest perhaps that first-degree burglary can't be a crime of violence under the fourth clause of the illegal reentry guideline? Your Honor, I believe that under New York law that it's an element, not a mean, so that has to be proven as an element, would be subsection 3 here, which is the use of a dangerous use of a threat and use of a dangerous instrument. So you have to prove that in terms of intent. Anything else you want to say? No, Your Honor. Okay. Thank you. If Jones is good law, imagine that that opinion had not been vacated, because I guess we still have to contend with the possibility that it will be reinstated as written. If Jones is good law, then you lose, or do you have still another argument? Your Honor, if Jones is good law, Jones only looks at subparagraph 2, which is possessing of the weapon. Here, subparagraph 3 is the actual employment or use of the weapon. And, in fact, in the New York court of appeals case, New York v. Grant, the court of appeals differentiates between subsection 2 and subsection 3, meaning just the possession of the dangerous instrument versus the active employment or use of that dangerous instrument. And as the court said, held in Jones, they just are looking at that one subsection and they weren't holding about anything else. In your view, you have an argument that Jones would be distinguishable, so even if that case remains on the books, you would still be here arguing for this case. That's correct, Your Honor. So starting where he left off, for Jones to be distinguished on that ground, that goes directly to the other questions Your Honors were asking about whether the strict liability for the enhancement. And as Judge Chin pointed out, in the indictment, it says,   and subsection 3. And in the indictment, it says, or another participant in the crime threatens or uses the dangerous instrument. It's not boilerplate. That's what the statute requires. So this, under the categorical approach, whether or not he's charged with a codependent is not relevant because the statute states that it's he or another participant in the crime threatens or uses the dangerous instrument. And that's why this particular  isn't a crime of violence, doesn't meet that standard. The government also said that the judge had examined Mr. Hanau's record and done an expansive review. The record doesn't support that. There was no examination of Mr. Hanau. Not that the court was required to do an extensive examination. It wasn't. But it was required to do some examination. And he was a family man. There was no dispute he was returning to the United States to be with his family, that all he did was try to do that, that he didn't have any aggravating conduct with respect to the crime that he was being sentenced to here. He went to the airport and said, I'm just trying to come into the country. This isn't the situation where an almost four-year sentence was reasonable. The court didn't explain it, and it wasn't substantively reasonable anyway. If he were resentenced, if he were sentenced today, his guideline range would be lower and he should get the benefit of that. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. The three other final three cases, as I said, were on submission. The clerk will adjourn court.